We have three cases on the docket. I think in all the cases we have an experienced counsel who are familiar with the lighting system and the panel has read the briefs, are familiar with the basic facts of the case, so the best way to use your limited time is to jump right into the argument. With that, we'll call United States v. Vinagre-Hernandez. Mr. Lynch? Thank you, Your Honor. May it please the Court. I'm Phil Lynch. I'm here for Mr. Vinagre today. The first issue in this case is whether the evidence was sufficient to support the conviction. It was not. The government's evidence failed to show that Mr. Vinagre knew that he possessed marijuana. It failed to show that he had it purposely associated with the marijuana smuggling venture with the shared intent of the principal. The evidence must show a consciousness of the guilt of the crime charged and it failed to do so in this case. The government's evidence consisted largely of profile and background testimony. We heard a lot about the agent's experiences. We heard a lot about patterns of boots. We heard about patterns of drop-off points. But what the government's evidence didn't show us was that Mr. Vinagre knew that there was marijuana. According to the other trafficker who testified, he's carrying a heavy backpack through the desert near the border. I mean, can't a jury... I mean, it went to trial and maybe the jury would have said, oh, he didn't know. But how can a jury not have the ability to say he knew what was inside that heavy backpack he's lugging across the desert in the heat? Because the government didn't show that anyone should know what was in the backpack. There was, unlike most cases, there's no testimony about an odor. Unlike most cases... What would it have been other than some contraband? It could have been a contraband, Your Honor, but they have to prove knowledge... What about... you acknowledge that... I mean, that it had to be a contraband. What would it have been if it were not a contraband, with five or six people hauling huge backpacks of some substance? And it may have been contraband simply because it came across the river, not at an entry point, but it could have been something that was going to be sold in the United States that wasn't a drug. Well, okay, if it were not marijuana, if it were not drugs, what would it have been? Well, I don't think that's up to the defense to show. It's up to the government... Well, it's up to the jury to make reasonable conclusions. As I say, the jury doesn't take But they have to show that there's some reason that the jury can reasonably infer that it was marijuana. And I don't think they did in this case. The only thing they have besides essentially profile and background testimony is that he ran when the agents came. But as this Court has made clear for decades, consciousness of guilt must be linked to the crime charged. And since he was in the country illegally, he had a very good reason and wished to remain in the country. He had a very good reason to flee the agents. But isn't he linked in other ways to the others involved in the marijuana transportation? I mean, between the boots that they're all wearing that are given to them by the person who has identified, then, of course, as Judge Jolly mentioned, the testimony of one of the others in the group. I mean, we're not talking about simply, gee, carry this backpack and it seems heavy, but don't worry about it. It's not contraband. I mean, we've got other people in the country that they can make reasonable inferences based on circumstantial evidence. I agree with almost all of that, Judge Englehart. Again, contraband is not what he was accused of transporting and possessing. It was marijuana. And that's where the problem is. They haven't shown knowledge in marijuana. Maybe they did. The jury could infer there was some sort of... Once you concede it was contraband, and you don't have to concede it's obvious it was contraband, and the next small step is it was a drug, and the next small step is it could have been marijuana. But as we make those small steps, we're piling inferences, Your Honor, and we're relieving the government of its burden. Reasonable inferences. Is the jury allowed to do that? Well, I think at a certain point it becomes attenuated, and I think that the government's lack of evidence here is the problem. And Judge Englehart brought up the co-defendant. The co-defendant says he didn't know he was carrying marijuana. He was hired to do a job with some sort of contraband. So again, I think the government's evidence is not there. The second issue in this case has to do with whether the district court should have considered Mr. Vinagre's speedy trial issue that he raised pro se in a letter to the court, and it was never addressed by the court. Let me ask you before we get into the propriety or not of the court's treatment of his pro se request. For purposes of calculation, you seem to be making an argument that the government's motion that was pending prior to the indictment should not be considered. That's the government's argument, as I understand it, is, well, there's a period of some six days or so or seven days where they had a motion pending, and so that time should be subtracted out of your speedy trial time. Yes, Your Honor. You argue that we should not consider that motion because it's pre-indictment. What authority do you have that that motion should be considered differently than any other pretrial motion? How is there a distinction? I think you've gotten us to the heart of the case, Your Honor, which is what is a pretrial motion for purposes of the Speedy Trial Act. And my argument is it has to be something that occurs after a valid charging document is filed, because otherwise we're acting contrary to the purposes of the Speedy Trial Act. And what is your authority for what you just said? Is there a case, especially a Fifth Circuit case? There is not a case that says that. There is not a case that says absolutely that it is. It has been assumed without being decided in the Gonzales case that my colleague filed the other day. McCusker from 20-so years ago may be read that way, but McCusker involved a superseding indictment, so I don't think it's apt. I think the way to look at this, as I suggest in my reply brief, is to look at the way the Supreme Court has treated constitutional speedy trial issues, to look at the way the Speedy Trial Act claims in telling us the defendant in Sednor can't opt out. If we interpret a motion that the government files before a valid charging document has been filed as halting the time in which they have to file a valid charging document, we're essentially letting them opt out for a while. But that happens on — you clearly acknowledge that happens at — post-indictment, before trial. I mean, looking at the statute, Part H says the following periods of delay shall be excluded in computing the time in which an indictment must be filed, which is what we're talking about here, or computing the time within which the trial must commence. And then it lists a number of exceptions, and one is delay resulting from any pretrial motion. So it seems to me you're saying that doesn't apply to one of those two categories, pre-indictment delay, when the statute says all these categories apply to both. I think the question is, yes, what does — in the statute, what does pretrial motion mean? To be brought to trial, there has to be a valid charging document. And so something that's filed before there's a valid charging document is not something that is pretrial, because no trial is possible without a valid charging document. And especially when the motion is a motion to detain, we're not only letting them essentially opt out for some period of time that it takes to decide that motion, but it really affects the heart of the Speedy Trial Act, because that person who may be detained and spend the entire time in custody now has to sit for an additional week or so before he even finds out what the charge is against him. And so for that reason, I think that pretrial in the statute should be read consistently with the way that the Supreme Court has addressed constitutional Speedy Trial Act questions, which is to say pre-indictment delay is a separate issue. It's an issue covered by the Fifth Amendment and due process. Once the indictment comes down, we apply the Sixth Amendment and the Speedy Trial Clause. And so for purposes of reading the Speedy Trial Act consistently with constitutional Speedy Trial Act jurisprudence, and for purposes of effectuating the policy of the Speedy Trial Act, which is to ensure prompt justice for a criminal defendant, as this Court said long ago in the Giwa case, it is better to interpret a pretrial motion as one that occurs after a valid charging document is filed that allows a person to be trialed. When a person is not facing a valid charging document, to say the government can file pretrial motions, though they could not bring him to trial, seems to be an incorrect interpretation of the Speedy Trial Act. And for that reason... Do you want to address the waiver the government argues? As I said in the brief, I think there are two parts the government argues the waiver. I think their out-of-circuit cases are inept. Only in Spagnuola, which I'm sure I'm mingling, did he even attempt to raise the issue, and the court specifically, district court specifically told him, no, I'm not letting you do that. So in that case, I think we have your time has passed. I think we have a firm waiver in all of those cases. So in none of those cases did we have a case as here where the defendant attempted to raise it. Now, they say he also waived because he's not entitled to hybrid representation. But in the same document in which he raised the waiver, he said, my counsel is not helping me present my case. And the fact that he's also alleging counsel is not functioning as counsel is something that the district court should have responded to. Should have responded to the Speed Trial Act allegation and the effective assistance of counsel. But to make no response and to simply let him proceed the trial on an indictment that facially on a calendar is more than 30 days seems to me wrong and because of the allegation about his counsel's failure also takes us out of the hybrid representation rule so that there's no waiver in this case. All right. Thank you. Thank you, Your Honor. Reserved time for rebuttal. Good morning. May it please the Court. My name is Angela Raba. I'm from the United States Attorney's Office, the Western District of Texas, and I represent the United States. I'd like to begin briefly by addressing the substance of my opposing counsel's speedy trial issue. And I think basically, as we explained in the government's brief, the speedy trial calculation here has to exclude the time period for pretrial motions. And as Judge Costa pointed out, the express language of the Speedy Trial Act states that when calculating the 30-day clock, which is for between the arrest and the indictment, and calculating the 70-day clock, which is after indictment, pretrial motions are excluded. Now, I did file on Monday a motion to file a supplemental letter brief to address specifically the argument in the reply brief regarding the division or the distinction between pretrial motions and post-trial motions. And in that case, the court specifically, and it's a published case, so it's binding precedent, that court specifically, well, it addressed basically whether an oral motion for detention was a pretrial motion for purposes of the Speedy Trial Act. So although it was addressing the oral nature of the motion, ultimately the court decided that the four days from that oral motion for detention, which was filed prior to indictment, was excludable to delay. So under the Gonzales-Rodriguez case, the government's argument is that that's binding precedent. So our opposing counsel's argument does not apply. I mean, as in his brief, he doesn't cite any cases which says that his argument about the distinction between pretrial and post-trial motions are basically relevant to whether or not there's a pretrial motion excludable under the Speedy Trial Act. So... That's an interesting point, that how can it be pretrial when there is no trial scheduled? Well, and I think, but regardless of whether the pretrial definition would apply in other contexts, for purposes of the statute, Congress has determined that pretrial motions apply also to the 30-day clock. So this is an issue about what Congress intended, and it's Congress's intent for pretrial motions to apply. And this court has specifically addressed that issue in Gonzales. Now, also, I pointed out in Cruz, which that was a case cited in my case, that the motions for detention are pretrial motions. Now, although Cruz, that motion was filed after an indictment issued, but the Cruz case, if you'll notice, cites to two out-of-circuit cases. One of those cases is Moses, United States v. Moses in the Eighth Circuit, and that court also addressed a delay, I mean, sorry, a motion for detention that was filed prior to the indictment, and they said that was excludable. Also in Bowers, that was a Sixth Circuit case, which is also cited in Cruz, and basically that was a pre-indictment motion for detention, which was also excluded. So the government's point on the substance of the speedy trial motion is that the period resulting from the motion to detain is clearly excludable from the speedy trial clock for the 30 days. Under that calculation, only 25 days had expired, and therefore there was no violation of the speedy trial clock. Now, going to the waiver issue, there's two parts of the waiver issue. The first part is whether or not the waiver provision, which is contained in 3162A2, and that particular provision talks about the 70-day clock. The 30-day clock provision of the sanctions for speedy trial issues doesn't refer to a waiver, but other courts have held that the waiver that's contained in A2 also applies to the 30-day clock. And those are out-of-circuit cases, and this court, as far as I know, has not addressed that issue. The second part of that is whether— It does seem strange, though, to say it's waived, not just forfeited, even fully waived, when the defendant himself is very conscientious and is raising this point that none of the lawyers were thinking about. I mean, it was brought before the court. I mean, I understand that he can't be making arguments if he's represented, but it just seems odd when the issue is brought before the court to say he affirmatively relinquished that right. And I think that is an issue that—I mean, this court hasn't addressed it in a published case, but I think the government did cite a case where, in an unpublished provision, the court did say that a pro se motion to dismiss the indictment on speedy trial grounds filed when the defendant was represented by counsel was an unauthorized motion and the has no effect and there was no— What would be his recourse? I mean, he's actually, in this case, talking about the lawyer and the quality of the representation. Is his recourse simply, you know, that this is a habeas waiting to happen, or should the court not turn a deaf ear to his complaint under the Speedy Trial Act? No, Your Honor, I don't think it's turning a deaf ear, because in this case, even though he's raising it, and counsel has argued that there's an exception when there was an ineffective assistance of counsel claim, which is not being made in this case, but ineffective assistance of counsel in the context of speedy trial, you would have to assume that the counsel was ineffective for failing to raise it. But as we've argued, there was no speedy trial violation. So if there was no speedy trial violation, there was no ineffective assistance of counsel. Therefore, his letter was a nullity and— We're getting back to the merits of the speedy trial issue. I understand your point. I guess I'm just concerned that, like Judge Costa said, if he's affirmatively raising this as an issue, whether the district court erred in just pushing it aside, and it seems like your argument is that he waived it because his attorney didn't bring it, it all comes back to whether or not it's a valid argument. But I think the court, the district court, could make an evaluation and was within its discretion to evaluate the nature of his speedy trial claim. And when you look at the nature and the substance on the merits, the district court could clearly find that there was no speedy trial violation, and therefore, he didn't need to address it. But either way, in this case, the court doesn't even have to reach the issue of waiver, because I think it's very clear that on the merits of the speedy trial case, there was no violation. Now, briefly, if I may address the sufficiency of the evidence, with regard to the sufficiency, I think an important thing to remember here is that the defendant did testify. And he didn't testify that, yes, I carried the bags, but I didn't know what was in them. What he said was, I didn't have anything to do with it. He denied meeting the co-defendant who testified against him until he said, I didn't meet him before, I only met him when I was detained. He denied going to the Mexican town of San Antonio. He denied carrying the backpack into the United States. He denied possessing the backpack in the United States. And instead, he just claimed that I was crossing because I wanted to go to Salt Lake City. I came with two guides. Those guides took off because they were afraid of the border patrol. So basically, his argument is that he was just in the area, sauntering through with no association at all. But in this case, the key evidence which ties him to the marijuana is the testimony of Reynoso Montes. And Reynoso basically said he was at the house with us. He was transported to the river. In the truck that transported us to the river, there were all these bags of marijuana. All of us carried the bags across the river. So he himself was carrying a bag, and there was a total of, I think it was 320 pounds of marijuana. So the weight itself, each person would have had to have been carrying over 50 pounds of marijuana in a sack. They had to have known it wasn't personal items because they had their own personal items. Reynoso said when we came across, they call them tricky bags. I don't know why, but that's what the border patrol refers to, these personal bags. They had personal bags. So even though Reynoso's evidence is enough to establish his connection, there's other corroborating evidence that he was part of it. He had the same type of shoes that everybody was wearing. Why would he not associate those bags with marijuana? The agent said he wasn't carrying a tricky bag when they did find him. So that also ties into the fact that he was one of the people that left the area. As you know, on the border, there's a lot of these cases where it's common cases. Cars coming across the border. There's a hidden compartment in the car that has drugs. It gets discovered, and the jury either finds him guilty or not, but those are typically within the province of the jury. This seems to me, when you're lugging a heavy backpack through the hot desert, it's even more likely you know than you know there's a hidden compartment in a car you're driving. Some people get acquitted on cases like this, but it seems to me it's a classic jury question. Yeah, and the jury rejected his story. The jury rejected his argument, and I think the fact that he fled from the arroyo, or what they call the wash. He fled when they saw the border patrol. They also picture him trying to hide, squatting down, which also shows consciousness of guilt. So I think all of the factors all together support the jury's conclusion that he transported the bags, he was associated with that group, and he knew that the bags contained marijuana. You mentioned, I think Reynoso is the witness who testified. Yes, sir. How do you reconcile his testimony, and I think counsel also raised it here, but it's also in the briefs, that Mr. Reynoso said that he was unaware. You rely upon him to some extent to secure the conviction, but then he also, I believe, has some testimony that he, too, was unaware. It goes directly to the argument that's being made by the appellant. I think you have to read that testimony in context, and what was being asked is specifically, and did you know what your job was when you got to the house? And he said, no, sir. Did you find out what your job was? No, sir. You never found out your job was to carry bags of marijuana? No, sir. You ended up carrying a bag of marijuana? Yes, sir. Did you spend the night at the house? What did you do the following morning? They drove upriver. So basically he talks about exactly what he did, but this conversation needs to be in context with what he said initially when they questioned him. And the initial questions were, how did you get involved? And he said it was through, I believe it was, he said that he became involved through, he was recruited by someone at a racetrack to run drugs. Then he said, that person bought me the shoes. Then he said, that person drove me to San Antonio. And that person, and then from San Antonio we got in the truck and we went to the river with all these drugs, bags of marijuana. So when you read that in context, it's not clear that what he was addressing in terms of saying he didn't know, whether he didn't know before, and then once he got there, that's when he found out. So I think a jury could draw that inference. It's really not inconsistent when you consider the fact that he said he was recruited to run drugs. So with that, if there are no further questions, I give back my time. Thank you. Butler. Very briefly, Your Honor. Judge Engelhardt's question. And, yes, I wish someone would object to the prosecutor testifying, but they didn't. Almost all of Reynoso's testimony was the prosecutor stating things and him saying yes or no. But I think it's key that he says he didn't know what was in the bags and that he doesn't is what it comes down to. Yes, it may have been contraband. But that's not true. It sounds like what I heard from your opponent is that there's also statements that he made when apprehended in the presentation of those statements to the jury. Are we talking about both or is there any difference? I'm talking about the before they get captured statements, which puts him in the same position there as Mr. Vinagre was in. So, again, it's not a matter of is there something in the bag. It's a question of do they prove what was in the bag that a reasonable person would know it was drugs. A reasonable person would know it was— We're talking about miles. They're walking miles with a 50-pound backpack. I'm going to ask what's in this thing that's weighing me down. I mean, isn't it logical for a jury to think you're going to check what's in the— even assuming this wasn't all planned in Mexico and everything. I think that raises a different point, Judge Costa, which is that might be deliberate ignorance, and there was not a deliberate ignorance instruction given in this case. Why can't the jury infer that he actually—assuming your theory that in Mexico he didn't know anything, someone gives him this backpack when they're about to cross the border, why can't the jury infer not that he turned a blind eye to it, but that he actually did at some point say to someone, boy, what is in this thing I'm having to carry, or you just zipped it open? That would be speculation both here and in the jury room. That's not a reasonable inference. That's speculation. You want to ask someone what's in this thing you're asking me to carry? We all knew there was collusion, Your Honor, and it turns out after thorough investigation there was not. We can't indulge in that kind of speculation in the jury room or in the courtroom. The government didn't prove something like odor of marijuana or visible marijuana that would have allowed them to say he knew it was something of a specific type of contraband, that is, the drugs that were charged. As to the speedy trial question, I think that, again, it comes down to what does pretrial motion in the statute mean, and I think the better plain-meaning version of pretrial is that a pretrial motion is one in which a valid charging document has been filed so that a trial may be held, and motions filed after a valid charging document are pretrial. Motions filed before are not. And I think construing it that way not only better comports with the plain language but better comports with the policies of the Speedy Trial Act. So I would ask. You use it in the plain language that there's a distinction between the 30-day and the 70-day period. You just said it comports with the plain language. I don't see a distinction there, and I'm looking for some authority. What you're saying is a good argument, and it certainly has some sensible appeal to it, but I don't see that in the statute, particularly in the plain language that you just mentioned. I think Congress did not specifically define pretrial, and I'm saying the plain meaning of pretrial would be, as lawyers understand it, would be something that occurs in a legal system that's prior to the trial. And to have a trial at all, you have to have a valid charging document. And without that, nothing can really be pretrial, and that comports better with the policies because we're not extending the amount of time that a person can be held without being charged. So I would ask that the court reverse the conviction. Thank you, Your Honors. Thank you, Mr. Lynch, and I see you're court-appointed. Thank you for taking the appointment and for ably representing your client this morning. Case is submitted. Thank you both. All right, next case is United States v. London.